1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

| 11 | SILVIA SOTO, | Case No.: 3:17-cv-1584-BEN (RNB) |
|---|---|---|
| 12 | Plaintiff, | **REPORT AND** |
| 13 | v. | **RECOMMENDATION REGARDING** |
| 14 | NANCY A. BERRYHILL, Acting | **CROSS-MOTIONS FOR SUMMARY** |
| 15 | Commissioner of Social Security,[1] | **JUDGMENT** |
| 16 | Defendant. | **(ECF Nos. 18, 24)** |

17

18          This Report and Recommendation is submitted to the Honorable Roger T. Benitez,

19   United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule

20   72.1(c) of the United States District Court for the Southern District of California.

21          On August 7, 2017, plaintiff Silvia Soto filed a Complaint pursuant to 42 U.S.C. §

22   405(g) seeking judicial review of a decision by the Commissioner of Social Security

23   denying her application for a period of disability and disability insurance benefits.  (ECF

24   No. 1.)

25

26   _____

27

28   [1] Nancy A. Berryhill is hereby substituted as the defendant in this case per Fed. R. Civ.
P. 25(d).

1

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court recommends that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL BACKGROUND**

On September 25, 2013, plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning July 12, 2013. (Certified Administrative Record ["AR"] 159-65.) After her application was denied initially and upon reconsideration (AR 105-10, 116-20), plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 121-22.) An administrative hearing was held by video on March 17, 2016. Plaintiff was represented by counsel and testimony was taken from her and telephonically from a vocational expert ("VE"). (AR 35-76.)

As reflected in her April 12, 2016 decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, from July 12, 2013, the alleged onset date, through the date of the decision. (AR 20-30.) The ALJ's decision became final on June 9, 2017, when the Appeals Council denied plaintiff's request for review. (AR 1-3.) This timely civil action followed.

**SUMMARY OF THE ALJ'S FINDINGS**

In rendering her decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 12, 2013, her alleged onset date. (AR 22.)

3:17-cv-1584-BEN (RNB)

At step two, the ALJ found that plaintiff had the following severe medically determinable impairments: degenerative disc disease; diabetic neuropathy; bilateral carpal tunnel syndrome; and left cubital tunnel syndrome. (AR 22.) The ALJ further found that plaintiff's medically determinable mental impairment of depression did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore nonsevere. (*Id.* at 23.)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 24.)

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to:

> "sit 6 hours out of an 8-hour day; stand 6 hours out of an 8-hour day; walk 6 hours out of an 8-hour day; occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; push and pull with upper extremities on a frequent basis only bilaterally; occasionally climb stairs; never climb ladders; occasionally balance, stoop, kneel, crouch and crawl; no overhead reaching at or above shoulder level bilaterally; frequent gross handling, fine fingering and fine feeling bilaterally; occasional is defined as very little to one-third of the time; frequent is defined at one-third to two-thirds of the time; never is defined as no useful ability." (AR 25.)

For purposes of her step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC would be able to perform the requirements of plaintiff's past relevant work as a bus attendant (as actually and generally performed) and as a home attendant (as actually performed). (AR 29-30.) Accordingly, the ALJ found that plaintiff was not disabled at step four of the sequential evaluation process. (*Id.*)

## PLAINTIFF'S CLAIMS OF ERROR

As best the Court can glean from plaintiff's summary judgment motion, the claims of error that plaintiff is raising as the grounds for reversal and remand are as follows:

3:17-cv-1584-BEN (RNB)

1. The ALJ failed to properly evaluate the medical opinion evidence and specifically the opinions of two examining physicians and two treating physicians.  (*See* ECF No. 18-1 at 13-25.)

2. The ALJ's adverse credibility determination is flawed because of her failure to properly evaluate the medical opinion evidence and her failure to mention plaintiff's "strong work history."  (*See* ECF No. 18-1 at 25-27.)

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

### DISCUSSION

**A.** **The ALJ failed to properly evaluate the medical opinion evidence.**

Plaintiff contends that, in determining her RFC and finding that she remained capable of performing her past relevant work, the ALJ failed to properly evaluate the medical opinion evidence and specifically the opinions of two examining physicians (Dr. Tantuwaya and Dr. Tilley) and two treating physicians (Dr. Padron-Spence and Dr. Hall). As discussed hereafter, the Court disagrees with plaintiff that the ALJ erred in her

evaluation of the medical opinions of the two examining physicians, Dr. Tantuwaya and Dr. Tilley, or in her evaluation of the September 2014 opinion of plaintiff's treating physician, Dr. Padron-Spence. However, the Court concurs with plaintiff that the ALJ erred in her evaluation of the opinions of plaintiff's treating physician, Dr. Hall, including the opinions contained in the February 2016 "Treating Source Statement" that the ALJ mistakenly attributed to Dr. Padron-Spence.

### 1. Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the claimant, (2) those who examined but did not treat the claimant, and (3) those who did neither. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's opinion. *Id.*

This is so because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Under the regulations governing claims such as plaintiff's filed before March 27, 2017, if a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. *See* 20 C.F.R. § 404.1527(c)(2)-(6).

The law is well established in this Circuit that, if the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *See Lester*, 81 F.3d at 830; *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir.

1991). Where a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Lester*, 81 F.3d at 830; *Gallant*, 753 F.2d at 1454. The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830. Even if contradicted by another doctor, the opinion of an examining physician may only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830-31; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

2.  Analysis

    a.  *Dr. Tantuwaya's April 2013 opinion*

In a "Neurosurgical Evaluation Report" dated April 26, 2013, Dr. Tantuwaya opined that plaintiff had permanent work restrictions of no repetitive flexion, extension, or rotation of the cervical spine and no overhead work. (AR 273.) In her decision, the ALJ stated that she was giving this opinion "partial weight as it address[ed] a period of time prior to the claimant's second cervical fusion" and that she was giving subsequent opinion evidence greater weight. (AR 27.) The subsequent opinion evidence included the opinions of two consultative examiners, Dr. Enriquez and Dr. Schweller, who did opine to some above-the-shoulder limitations (which the ALJ also included in her RFC assessment), and to less severe postural limitations than Dr. Tantuwaya. (*See* AR 295-302, 313-17.) For example, Dr. Enriquez opined in her consultative evaluation report that plaintiff could still do frequent bending, stooping and twisting (AR 298) and Dr. Schweller opined post-surgery

6

3:17-cv-1584-BEN (RNB)

that plaintiff had no limits in bending or stooping (AR 315). Thus, Dr. Tantuwaya's opinion was not uncontroverted and it only was incumbent on the ALJ to state a specific and legitimate reason for not fully crediting it. The Court finds that the reason stated by the ALJ met this standard.

### b. Dr. Tilley's August 2014 opinion

In August 2014, in connection with her worker's compensation claim, plaintiff underwent an "Initial Behavioral Pain Management/Psychological Evaluation" by Dr. Tilley, a clinical psychologist. (AR 318-39.) After administering a battery of tests, Dr. Tilley diagnosed plaintiff as suffering from chronic adjustment disorder with mixed emotional features, insomnia disorder, and pain disorder. (AR 336.) She assessed plaintiff's Global Assessment of Functioning ("GAF") score as 59 (*id.*), which represents moderate symptoms. With respect to the issue of plaintiff's disability status, Dr. Tilley stated that she would defer to plaintiff's treating physician in making this determination, although she indicated that plaintiff did have "an active psychiatric condition that would undoubtedly cause some work impairment or loss of optimal behavioral performance." (AR 337.) However, Dr. Tilley also opined that plaintiff had "not yet reached maximum medical improvement," and that, from a psychological perspective, she was assessed to be "temporary partially disabled." (*Id.*)

Plaintiff contends that the ALJ erred in her evaluation of Dr. Tilley's opinion by never stating the weight given to that opinion. (*See* ECF No. 18-1 at 17.) The Court disagrees. The ALJ did discuss Dr. Tilley's evaluation report in her decision. (*See* AR 23.) However, as noted above, with respect to the issue of plaintiff's disability status, Dr. Tilley stated that she would defer to plaintiff's treating physician. Moreover, while Dr. Tilley elaborated on her general clinical impression of plaintiff (*see* AR 337-38), nowhere in her evaluation report did Dr. Tilley purport to render an opinion on the degree of plaintiff's functional limitation in any of the four broad functional areas set out in the Commissioner's regulations then in effect for evaluating the severity of mental

impairments (*i.e.*, activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation). *See* 20 C.F.R. § 404.1520a(d)(1) (version effective June 13, 2011 to Jan. 16, 2017).

Further, Dr. Tilley's assessment of plaintiff as having a "temporary" disability for purposes of her worker's compensation claim meant that plaintiff was reasonably expected to be cured or materially improved with proper medical treatment. *See Brooks v. Workers' Comp. Appeals Bd.*, 161 Cal. App. 4th 1522, 1529-30 (2008). And, the inference to be drawn from Dr. Tilley's qualification that plaintiff's disability was only partial was that she remained capable of performing some work. Thus, Dr. Tilley's assessment was not relevant to the ALJ's determination of whether plaintiff was disabled for purposes of her Social Security benefits claim. Claimants are "disabled" for purposes of receiving Social Security benefits if they are **unable to engage in any substantial gainful activity** owing to a physical or mental impairment **that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months**. *See* 42 U.S.C. § 423(d)(1)(A); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

Consequently, the Court finds and concludes that the ALJ did not err in her evaluation of Dr. Tilley's August 2014 opinion because it was not probative of whether plaintiff suffered from a severe mental impairment or was disabled for purposes of her Social Security benefits claim. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ need only discuss evidence that is significant and probative).


### c. Dr. Patron-Spence's September 2014 opinion

In her decision, the ALJ attributed two medical source statements to plaintiff's treating physician, Dr. Patron-Spence, which the ALJ referenced as Exhibits 14F and 18F to the Administrative Record. (*See* AR 28.) However, it is evident from comparison of Dr. Padron-Spence's signature on the last page of Exhibit 14F (AR 398) to the signature on the last page of Exhibit 18F (AR 1494) that the February 5, 2016 "Treating Source Statement" marked as Exhibit 18F did not come from Dr. Padron-Spence. It is further

evident from comparison of the signature on the last page of Exhibit 18F (AR 1494) to Dr. Hall's signature on the first page of Exhibit 11F (AR 377) that the February 5, 2016 Treating Source Statement marked as Exhibit 18F in fact came from Dr. Hall. Accordingly, the Court will address the ALJ's reasons for rejecting the opinions contained in Exhibit 18F in the next section.

In the September 2, 2014 "Medical Source Statement" marked as Exhibit 14F, Dr. Padron-Spence rendered opinions as to plaintiff's mental status. She checked off boxes indicating that plaintiff had "apprehensive expectation" and experienced recurrent, severe panic attacks. Further, Dr. Patron-Spence checked off boxes indicating that plaintiff had extreme restrictions in activities of daily living and extreme difficulties in maintaining social functioning; and that plaintiff also had extreme episodes of deterioration or decompensation in work or work-like settings. (*See* AR 396-97.) She did not add any remarks or provide any explanation of the basis for these opinions. (*See* AR 398.) As noted above, the ALJ found that plaintiff's medically determinable mental impairment of depression did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore nonsevere. (AR 23.) The ALJ's stated rationale for not accepting the opinions reflected in Dr. Padron-Spence's September 2014 Medical Source Statement was that her findings were "overly restrictive in light of the lack of specialist behavioral health treatment" and that there were "no treatment records to support Dr. Padron-Spence's assessment." (AR 28.)

Nowhere in her decision did the ALJ cite any medical opinions of record that controverted Dr. Padron-Spence's opinions as to plaintiff's mental health status. Moreover, the State agency review physicians did not even purport to render opinions as to plaintiff's mental health status. (*See* AR 77-86, 88-99.) However, even if the opinions reflected in Dr. Padron-Spence's September 2014 Medical Source Statement are deemed uncontroverted, there is Ninth Circuit authority for the proposition that the Commissioner need not accept a treating physician's opinion that is brief, conclusory, and inadequately supported by clinical findings. *See, e.g., Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (stating that a physician's opinion may be "entitled to little if any weight" where the physician "presents no support for her or his opinion"); *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (holding that an ALJ may reject check-off forms that do not contain an explanation of the bases for their conclusions). Here, Dr. Padron-Spence provided no explanation of the basis for the extreme limitations to which she opined and, as noted by the ALJ, there were absolutely no treatment records for mental health issues predating the opinion to support the doctor's assessment. The Court therefore finds that the ALJ did not err in her evaluation of the opinions reflected in Dr. Padron-Spence's September 2014 Medical Source Statement.

### d. Dr. Hall's opinions

In connection with plaintiff's worker's compensation claim, Dr. Hall examined plaintiff and issued a "Permanent and Stationary Report" on June 16, 2014. (AR 378-86.) Based on his examination, Dr. Hall opined that plaintiff was precluded from repetitive motions of her cervical spine, precluded from work at or above shoulder level, and "prophylactically" precluded from lifting above 25 pounds. (AR 384.) Dr. Hall also opined that plaintiff was unable to return to her usual and customary job duties. (*Id.*) In her decision, the ALJ stated with reference to Dr. Hall's report: "Dr. Hall's findings concerning the claimant's functioning and return to work are based on the requirements of a workers compensation claim and are not binding in her current claim for disability." (AR 28.)

Since Dr. Hall's June 2014 opinion that plaintiff was incapable of returning to her past work was controverted by the opinions of the two State agency physicians (*see* AR 85, 98), the question becomes whether the ALJ's stated reason for rejecting Dr. Hall's opinion was legally sufficient. The Court finds that the answer is no. An ALJ must

3:17-cv-1584-BEN (RNB)

properly consider every medical opinion, without regard to its source or its criteria for disability. *See Macri v. Chater*, 93 F.3d 540, 543-44 (9th Cir. 1996); *Desrosiers*, 846 F.2d at 576; *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) ("[T]he ALJ may not disregard a physician's opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings."); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *see also McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011) (ALJ was required to consider VA rating of disability even though the VA and SSA criteria for determining disability are not identical). The fact that Dr. Hall's opinion on an ultimate issue was not binding on the ALJ did not relieve the ALJ of the obligation to state specific and legitimate reasons for rejecting that opinion. *See, e.g.*, *Reddick*, 157 F.3d at 725; *Lester*, 81 F.3d at 830 (9th Cir. 1996); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Dr. Hall also completed a medical source statement in September 2014. (*See* AR 392-95.) Dr. Hall opined therein *inter alia* that plaintiff was able to sit for 8 hours and stand or walk for 6 hours in a workday; that she could continuously lift and carry up to 10 pounds and could frequently lift up to 20 pounds; and that she would need to take unscheduled breaks to prevent flare-ups and re-injury of the cervical spine. As support for his opinions, Dr. Hall referenced his June 2014 Permanent and Stationary Report. (*See id.*) It appears from the ALJ's decision that the only part of Dr. Hall's September 2014 opinion that the ALJ rejected was Dr. Hall's opinion that plaintiff would need a sit/stand option at will. The ALJ's stated reason for rejecting this part of Dr. Hall's opinion was that there was no support in the treatment record for it. (*See* AR 28.) The Court finds that this conclusory assertion is not a legally sufficient reason for rejecting Dr. Hall's opinion, given the length of the treatment relationship and the frequency of examination, as well as Dr. Hall's extensive recent findings on examination. *See Embrey*, 849 F.2d 418, 422 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not

achieve the level of specificity our prior cases have required."); *see also Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017) (ALJ's conclusory assertion that treating physician's opinion was contradicted by his treatment notes legally insufficient where ALJ pointed to nothing in treating physician's treatment notes or elsewhere in the clinical record that contradicted the treating physician's opinion).

The third medical source statement in the record by Dr. Hall is Exhibit 18F (AR 1491-94), the February 5, 2016 Treating Source Statement that the ALJ mistakenly attributed to Dr. Padron-Spence. Dr. Hall opined therein *inter alia* that plaintiff was likely to be "off task" more than 25% of the workday and likely to be absent from work over four days a month; that plaintiff could rarely lift or carry 10 pounds and never lift or carry 20 pounds; that plaintiff could sit for two hours and stand or walk for one hour in an 8-hour work day; that plaintiff could never reach overhead and rarely perform other reaching tasks; that plaintiff required the sit/stand option at will; that plaintiff could only occasionally handle, finger and feel, and occasionally use foot controls; that plaintiff could never kneel, crouch, or crawl; and that plaintiff had extensive environmental limitations. (*See id.*)

The ALJ's stated rationale for rejecting the opinions contained in the February 2016 Treating Source Statement was predicated on the ALJ's mistaken belief that they were rendered by Dr. Padron-Spence. The ALJ noted, for example, that Dr. Padron-Spence reported having seen plaintiff every two months since October 2013, but the medical records did not include such frequent appointment notes. (AR 28.) The ALJ further noted that the appointment notes for the three visits with Dr. Padron-Spence documented in the medical records did not "provide detailed results of any physical or neurological examinations to substantiate the reported restrictions." (AR 28.) Since the ALJ's stated rationale for rejecting the opinions contained in the February 2016 Treating Source Statement did not apply to Dr. Hall (who had seen plaintiff every two months since 2013 and whose treatment records did include detailed results of physical and neurological examinations), the Court is unable to find that the ALJ stated legally sufficient reasons for rejecting those opinions. Moreover, the Court is unable to consider the reasons proffered

by the Commissioner for rejecting those opinions even if the ALJ had properly attributed them to Dr. Hall. *See Trevizo*, 871 F.3d at 675 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

## B. The ALJ failed to make a proper adverse credibility determination.

Plaintiff contends that the ALJ's adverse credibility determination is flawed because of her failure to properly evaluate the medical opinion evidence and her failure to mention plaintiff's "strong work history." However, the Court has found that the ALJ did not err with respect to three out of the four doctors and the Court fails to see how the ALJ's failure to articulate legally sufficient reasons for rejecting Dr. Hall's opinions in itself renders the ALJ's adverse credibility determination flawed. Moreover, while plaintiff is correct that the ALJ is required to consider a claimant's work history when assessing credibility, *see* 20 C.F.R. § 404.1529(c)(3), plaintiff has failed to cite any legal authority for the proposition that the ALJ is required to specifically mention a claimant's "strong work history" in his/her assessment of the claimant's credibility.

Nevertheless, the Court is unable to affirm the ALJ's adverse credibility determination for the following reason. Under the "*Cotton* standard," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Smolen*, 80 F.3d at 1281; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

Here, as the ALJ acknowledged in her decision, plaintiff testified at the administrative hearing *inter alia* that she was limited to walking or standing for 3-5 minutes at a time, that she was unable to sit without standing to move around, and that she could only lift 2-3 pounds. (AR 26; *see also* AR 45.)

With reference to plaintiff's testimony, the ALJ then stated:

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 26.)

Since the ALJ did not make an express finding of malingering, the issue before the Court is whether the ALJ provided reasons for her adverse credibility determination that satisfy the standard set forth above. The Court finds and concludes that the answer is no. Contrary to the Commissioner's characterization, the Court does not construe the ALJ's decision as setting forth any reasons for the ALJ's adverse credibility determination, let alone the requisite clear and convincing reasons. The Commissioner would have the Court infer the ALJ's reasons from an earlier part of the ALJ's decision when the ALJ was discussing other issues and made no reference to plaintiff's credibility. (*See* ECF No. 24-1 at 9.) That is not the proper standard. *See Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006) ("We note that the ALJ did not provide a narrative discussion that contains specific reasons [for his adverse credibility determination]. . . .While an ALJ may certainly find testimony not credible and disregard it . . ., we cannot affirm such a determination unless it is supported by specific findings and reasoning.") To the extent that the Commissioner is purporting to proffer various reasons on which the ALJ could have relied to support an adverse credibility determination, the authorities cited above preclude the Court from considering any of those reasons.

3:17-cv-1584-BEN (RNB)

**CONCLUSION AND RECOMMENDATION**

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g., Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g., Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which a disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court notes that plaintiff is not seeking a remand for the payment of benefits, but rather a remand for further administrative proceedings. (*See* ECF No. 18-1 at 27; *see also* ECF No. 28 at 5.)

The Court therefore **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

//
//
//
//
//
//
//
//

1    Any party having objections to the Court's proposed findings and recommendations
2 shall serve and file specific written objections within 14 days after being served with a
3 copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections
4 should be captioned "Objections to Report and Recommendation." A party may respond
5 to the other party's objections within 14 days after being served with a copy of the
6 objections. *See id.*
7    IT IS SO ORDERED.
8
9 Dated:  September 25, 2018

10                                        _____
11                                        ROBERT N. BLOCK
                                         United States Magistrate Judge
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28